IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICAH CHEZUM,<br><br>      **Plaintiff,**<br><br>v.<br><br>SGT. SIMMONS, C/O KELLERMAN,<br>C/O FURLOW, and ROSE LOOS,<br><br>      **Defendants.** | Case No. 24-cv-1658-MAB |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Micah Chezum, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Pinckneyville Correctional Center. In the Complaint, Chezum alleges that Defendants failed to provide him with care during his mental health crisis and used excessive force against him, in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

1

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Chezum makes the following allegations: In May 2023, while at Pinckneyville Correctional Center, Chezum was placed on suicide watch due to severe depression and issues with self-cutting (Doc. 1, p. 6). Chezum requested to speak to mental health staff and specifically asked Sergeant ("Sgt.") Simmons and Correctional Officer ("C/O") Furlow to contact mental health staff. His requests were ignored (*Id.*).

On June 6, 2023, Mental Health Professional Mrs. McClure conducted a mental health review of Chezum (*Id.*). But during the review, she called Chezum names, noting that he was ignorant (*Id.*). She also blamed Chezum's ignorance on his "black blood" (*Id.*). She then laughed at Chezum. In response, Chezum cursed at McClure, acted belligerent, and was ultimately dragged back to his cell by C/O Furlow, C/O Kellerman, and C/O Hess (*Id.*). Upon returning to his cell, Sgt. Simmons approached Chezum's cell with a nurse and a broomstick (*Id.*). Sgt. Simmons jabbed at Chezum with the broomstick through the chuckhole, directing Chezum to back away from the chuckhole (*Id.*). After securing the chuckhole, Sgt. Simmons left. But C/O Kellerman later came back with the broomstick and again jabbed at Chezum through the chuckhole (*Id.*). He struck Chezum in his lower midsection until Chezum finally grabbed the stick, causing it to the break off. As a result, Chezum possessed one half of the broomstick with a sharp end (*Id.*).

Sgt. Simmons returned to Chezum's cell and asked Chezum to stop harming himself and to return the broomstick before staff got into trouble for their actions. Chezum refused the request. Mental Health Authority Rose Loos then approached Chezum's cell and requested that the broomstick be returned. She noted that staff would get in trouble if the stick was not returned. She also directed Chezum to stop harming himself with the stick (*Id.*). Chezum requested to speak to Warden Crow for his safety, but staff kept requesting that Chezum return the broomstick. Despite numerous requests from C/O Furlow, Sgt. Simmons, and Loos, Chezum refused to return the broomstick.

Chezum reported to Loos that he was afraid because an inmate recently died while on suicide watch (*Id.*). Loos promised to place Chezum in an insolation cell in the healthcare unit for further observation if he returned the broomstick (*Id.* at p. 7). Chezum finally returned the broomstick to Loos (*Id.*). She, however, failed to follow through on her promise and Chezum never saw Loos again (*Id.*). Chezum also alleges that he requested medical care for the injuries he received during the incident, both from the use of force and his own self-harming with the stick, but Defendants failed to obtain medical care for his injuries (*Id.* at p. 8).

The following day, Lt. Ridgeway, Sgt. Simmons, and C/O Furlow approached Chezum's cell with tactical shields (*Id.* at p. 7). Lt. Ridgeway sprayed excessive amounts of mace into the cell. Chezum believes that the mace attack was in retaliation for the incident involving the broomstick. Chezum alleges that he was placed in a shower to wash off the mace because it was burning him. He alleges that Furlow laughed at Chezum as he was burning from the mace (*Id.*).

3

**Preliminary Dismissals**

Although Chezum mentions Mrs. McClure and Lt. Ridgeway in his statement of claim, he fails to allege that they violated his constitutional rights in any way (Doc. 1, pp. 8-9). He also fails to identify them in the case caption, nor does he list them as defendants in his Complaint (*Id*. at pp. 1-2). *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Thus, any claim against McClure and Ridgeway is **DISMISSED without prejudice**.

Chezum also alleges that the use of mace by Ridgeway, Simmons, and Furlow on June 7, 2023 was in retaliation for Chezum taking the broomstick on June 6, 2023. In order to state a First Amendment retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). *See also Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). But Chezum fails to allege that he participated in protected activity. He only alleges that he took a broomstick from staff and refused to give it back. He fails to indicate what protected activity led to the retaliatory actions of the officers in spraying him with mace. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (inmates have right to file grievances about their conditions of confinement); *Walker v. Thompson*, 288 F.3d 1005, 1008-09 (7th Cir. 2002) (protected conduct of utilizing the law library in order to pursue claims in court); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000) (protected

4

right to access the courts). Thus, Chezum's claim of retaliation is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** Eighth Amendment excessive force claim against Sgt. Simmons and C/O Kellerman for poking Chezum with a broomstick on June 6, 2023.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Sgt. Simmons, C/O Furlow, C/O Kellerman, and Rose Loos for failing to obtain medical care for Chezum in May and June 2023.
>
> **Count 3:** Eighth Amendment excessive force claim against Sgt. Simmons and C/O Furlow for spraying Chezum with excessive amounts of mace on June 7, 2023.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Counts 1 and 3**

At this stage, Chezum adequately states claims for excessive force in Counts 1 and 3. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012); *DeWalt*, 224 F.3d at 619. As to

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Count 1, Chezum alleges that Kellerman poked him with a broomstick handle on numerous occasions, noting that Kellerman struck Chezum in the midsection with the broomstick. Thus, Count 1 shall proceed against Kellerman. But Chezum fails to adequately allege that Simmons used excessive force with the broomstick. Although he alleges that Simmons poked the broomstick through the chuckhole in an effort to push Chezum away from the chuckhole, there is no indication that she actually hit Chezum with the broomstick. There are simply no allegations to suggest that Simmons' actions with the broomstick amounted to excessive force. Thus, any claim against Simmons in Count 1 is **DISMISSED without prejudice**. But Chezum does adequately allege in Count 3 that Simmons and Furlow came to his cell with tactical shields and used an excessive amount of mace on him (Doc. 1, p. 7). That is enough at this stage to state a claim of excessive force and Count 3 will proceed against Simmons and Furlow.

**Count 2**

Chezum also states a claim in Count 2 for the defendants' deliberate indifference to his physical and mental health needs. *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017) (In reviewing a claim for deliberate indifference to a plaintiff's medical condition the Court "first examin[es] whether a plaintiff suffered from an objectively serious medical condition, and then determine[es] whether the individual was deliberately indifferent to that condition."). Chezum alleges that in May and June he specifically made verbal requests to Simmons and Furlow to speak with mental health staff, but they ignored his requests for help (Doc. 1, p. 6). He also alleges that during the incident with the broomstick, Chezum used the portion of the

6

stick he took to self-harm. He also suffered injuries from the use of force. But none of the defendants, including Loos, Furlow, Simmons, and Kellerman, sought to obtain medical care for the injuries he suffered during the incident (*Id*. at p. 8). Thus, Count 2 shall proceed against Loos, Furlow, Simmons, and Kellerman.

## Disposition

For the reasons stated above, Count 1 shall proceed against C/O Kellerman. Count 2 shall proceed against Sgt. Simmons, C/O Kellerman, C/O Furlow, and Rose Loos. Count 3 shall proceed against Sgt. Simmons and C/O Furlow.

The Clerk of Court shall prepare for Defendants Sgt. Simmons, C/O Furlow, C/O Kellerman, and Rose Loos: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Chezum. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Chezum, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Chezum's claims involve his medical and mental health care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Chezum, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Chezum is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: October 23, 2024

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**