IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICAH CHEZUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-CV-1658-MAB |
| | ) |
| CHRISTINA SIMMONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Jason Furlow, Niel Kellerman, Rose Loos, and Christina Simmons' Motion for Summary Judgment on the Issue of Exhaustion (Doc. 37). For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part (Doc. 37). Specifically, Defendants' Motion is GRANTED as to Count 3, and that claim is DISMISSED. Conversely, it is DENIED, at this time, as to Counts 1 and 2 because a factual dispute exists. However, Defendants may request a *Pavey* hearing if they wish to further pursue the affirmative defense of exhaustion and contest the factual issues discussed below.

### BACKGROUND

Plaintiff Micah Chezum filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was incarcerated at Pinckneyville Correctional Center in June 2023 (*see* Docs. 1, 18). Plaintiff's Complaint alleges that he was placed on suicide watch at Pinckneyville in May 2023 due to severe depression and issues of self-harm (Doc. 18 at p. 2). During that time, Plaintiff

alleges that he asked Defendants Simmons and Furlow to contact mental health staff, but they ignored his requests (*Id.*).

On June 6, 2023, Plaintiff was called inappropriate names by a mental health professional, which prompted him to curse and act belligerently (*Id.*). In response, he was dragged back to his cell by C/O Hess and Defendants Furlow and Kellerman (*Id.*). Shortly after, while accompanied by a nurse, Defendant Simmons approached Plaintiff's cell holding a broomstick (*Id.*). Defendant Simmons instructed Plaintiff to back away from his cell door and jabbed at him with the broomstick through his cell's chuckhole until she was able to secure the chuckhole (*Id.*). Defendant Kellerman subsequently returned with the broomstick and jabbed at Plaintiff through the chuckhole, striking Plaintiff in his lower midsection (*Id.*). However, Plaintiff was able to grab the broomstick Defendant Kellerman was hitting him with, which caused the broomstick to break – leaving a sharp, broken portion of the broomstick in Plaintiff's possession (*Id.*). Plaintiff then used the sharp end of the broken broomstick to cut himself (*Id.*; *see also* Doc. 1 at p. 6).

Defendant Kellerman returned thereafter and asked Plaintiff to hand over the broken broomstick and stop harming himself before staff got in trouble for their actions (Doc. 18 at p. 3). Plaintiff refused and Defendant Loos, a mental health professional, approached Plaintiff's cell and asked him to return the broken broomstick (*Id.*). After several unsuccessful requests from Defendants Loos, Simmons, and Furlow, Defendant Loos eventually succeeded in getting Plaintiff to return the broken broomstick by promising to place Plaintiff in an isolation cell in the healthcare unit (*Id.*). However, Defendant Loos did not follow through on her promise (*Id.*). Additionally, Plaintiff

allegedly requested medical care due to his injuries, but Defendants Loos, Simmons, Furlow, and Kellerman all refused or ignored his requests (*Id.*).

One day later, on June 7, 2023, Lt. Ridgeway and Defendants Simmons and Furlow approached Plaintiff's cell with tactical shields (*Id.*). Lt. Ridgeway proceeded to spray excessive amounts of mace into Plaintiff's cell in apparent retaliation for the broomstick incident (*Id.*). When Plaintiff was subsequently placed in a shower to wash off the mace that was burning him, Defendant Furlow laughed at Plaintiff (*Id.*). Plaintiff was transferred to Menard Correctional Center just a few weeks later (Doc. 1 at p. 7; *see also* Doc. 37-1) (documenting that Plaintiff was transferred from Pinckneyville to Menard on 6/28/2023).

Plaintiff initiated this action by filing a Complaint on July 3, 2024 (Doc. 1). The Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A in October 2024 (Doc. 18). Ultimately, Plaintiff was permitted to proceed on the following claims:

> Count 1: Eighth Amendment excessive force claim against [sic[1]] C/O Kellerman for poking Chezum with a broomstick on June 6, 2023.
>
> Count 2: Eighth Amendment deliberate indifference claim against Sgt. Simmons, C/O Furlow, C/O Kellerman, and Rose Loos for failing to obtain medical care for Chezum in May and June 2023.

---

[1] Plaintiff had also sought to raise his excessive force claim in Count 1 against Defendant Simmons (*see* Doc. 1 at p. 8). However, the Court dismissed the claim against Defendant Simmons in Count 1 because Plaintiff failed to include any allegations which could have established that Defendant Simmons' actions with the broomstick amounted to the use of excessive force (Doc. 18, p. 6).

> Count 3: Eighth Amendment excessive force claim against Sgt. Simmons and C/O Furlow for spraying Chezum with excessive amounts of mace on June 7, 2023.

(*Id.* at pp. 5-7).

On April 7, 2025, Defendants filed the instant Motion for Summary Judgment on the Issue of Exhaustion (Doc. 37). Plaintiff filed his Response in Opposition on April 21, 2025 (Doc. 39). Defendants did not file a reply in further support of their motion.

## LEGAL STANDARDS

### I. *Summary Judgment Standards*

Summary judgment is appropriate if the movants show there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). Nevertheless, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

## II.   *Exhaustion Requirements*

As provided in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

## III.   *IDOC Grievance Procedures*

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their

institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (the "ARB"). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e). Furthermore, "[r]ecords regarding the filing and disposition of grievances shall be maintained in the offender's master file." *Id.* at § 504.860.

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

## DISCUSSION

Defendants contend that Plaintiff failed to exhaust his administrative remedies

because he neither timely filed a grievance which identified the issues raised in his Complaint, nor pursued any relevant grievance through the entire administrative process (*see generally* Doc. 37). In response, Plaintiff contends that he both timely filed grievances at the facility level and attempted to appeal a relevant grievance to the ARB, but his filings went missing or unanswered in each instance (*see generally* Doc. 39). The Court will address the grievance on file, as well as Plaintiff's alleged, missing grievances in turn.

    I.    *Grievance No. K4-1023-1130*

Only one grievance record, Grievance No. K4-1023-1130, contains any discussion of the incidents in question (*see* Doc. 1 at pp. 11-14). That grievance, which was filed at Menard on October 26, 2023, grieves events related to the alleged broomstick incident that occurred at Pinckneyville on June 6, 2023 (*Id.*). More precisely, Grievance No. K4-1023-1130 claims that on that date, Defendant Simmons came to Plaintiff's cell while he was on crisis watch and attempted to jab him with a broomstick when he approached the cell door (*Id.* at p. 12). The grievance claims that Defendant Simmons left and returned with Defendant Kellerman, who immediately approached the cell's chuckhole and began striking Plaintiff with the broomstick (*Id.*). The grievance then recounts the broomstick breaking and Plaintiff harming himself with the sharp, broken portion of the broomstick in his possession (*Id.*). Grievance No. K4-1023-1130 then states that Defendant Loos arrived and attempted to persuade Plaintiff to return the broomstick in exchange for extra food and an air-conditioned cell in the healthcare unit (*Id.*). The grievance then states, "Rose Loos, Sgt. Simmons, and C/O Kellerman observed me self-harm with the broom stick. Also C/O Furlow and C/O Hess were presently active in duty in 6 house during

this time of me being assaulted and failed to intervene." (*Id.*). Notably, at the bottom of Grievance No. K4-1023-1130, Plaintiff also wrote, "this is the 3rd time I'm submitting this grievance, the first time was July 6, 2023, the second time was August 23." (*Id.*).

Grievance No. K4-1023-1130 was deemed an emergency by Menard's Warden on October 31, 2023 (*Id.* at p. 11). It was then forwarded to the Grievance Officer who reviewed it on November 1, 2023 (*Id.* at p. 13). Ultimately, the Grievance Officer recommended the inmate's grievance be referred to Internal Affairs at Pinckneyville and found RESOLVED (*Id.*). The Grievance Officer's response included a statement from Mental Health at Menard, which noted that Plaintiff had been scheduled for numerous mental health appointments while housed at Menard and thus, "the frequency of your visits has indicated that your mental health needs have been adequately met." (*Id.* at p. 14). Menard's Warden concurred in the Grievance Officer's recommendation on November 6, 2023 (*Id.* at p. 13). Finally, the bottom portion of the report that is used to appeal a grievance to the ARB was signed by Plaintiff and dated November 27, 2023 (*Id.*).

Defendants first argue that Grievance No. K4-1023-1130 was untimely because it was filed more than 60 days after the June 6, 2023, incident that it is grieving (Doc. 37 at pp. 8-9). *See* 20 Ill. Admin. Code § 504.810(a) ("A grievance must be filed with the counselor or Grievance Officer in accordance with the procedures in this Subpart, within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance."). Here, while the face of Grievance No. K4-1023-1130 demonstrates that it was not filed within 60 days of June 6, 2023, this is not fatal to Plaintiff's exhaustion efforts because Grievance No. K4-1023-1130 was addressed and resolved on the merits at the

facility level (*see Id.* at p. 13). Significantly, "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). *See also McDaniel v. Meisner*, 617 Fed. Appx. 553, 557 (7th Cir. 2015) ("We have explained, however, that a [party's] failure to exhaust his administrative remedies is forgiven, i.e., the exhaustion requirement is satisfied, if prison officials ignore a grievance's administrative failings and address its merits."). Therefore, the Court rejects Defendants' 60-day timeliness arguments under § 504.810(a) because that procedural deficiency was not cited as a reason for denying Plaintiff's grievance – and in fact, Grievance No. K4-1023-1130 was not denied at the facility level but rather resolved on the merits (*Id.*).

Relatedly, Defendants argue there is no evidence that Grievance No. K4-1023-1130 was appealed to the ARB (*see* Doc. 37 at p. 8). However, as Defendants acknowledge (*see Id.* at p. 9), Plaintiff previously alleged that he attempted to timely appeal Grievance No. K4-1023-1130 to the ARB on November 27, 2023, but it was then lost, destroyed, or ignored through no fault of his own (*see* Doc. 39 at p. 1). In support of this contention, Plaintiff has provided a subsequent grievance and a letter to the ARB, both of which inquire into the status of his appeal of Grievance No. K4-1023-1130 to the ARB (*see* Doc. 39 at pp. 3-5). Additionally, Grievance No. K4-1023-1130 itself provides some support for Plaintiff's contention that he appealed that grievance to the ARB because the portion of the accompanying grievance report used to appeal the Warden's decision to the ARB

contains Plaintiff's signature from November 27, 2023 (Doc. 1 at p. 13).

Consequently, while Defendants cite the ARB's records and a supporting affidavit to demonstrate that the ARB never received a timely appeal of Grievance No. K4-1023-1130 (*see* Doc. 37 at p. 8), this is not dispositive because the lack of records at the ARB level does not definitively establish that Plaintiff did not attempt to timely appeal his grievance to the ARB. Rather, it merely shows that no such record was logged by the ARB. Suffice it say, providing evidence of no documented receipt of a grievance appeal is not the same as demonstrating that Plaintiff never attempted to appeal his grievance to the ARB. *See, e.g., Schaefer v. Bezy*, 336 Fed. Appx. 558, 560 (7th Cir. 2009) ("Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that Schaefer was prevented from exhausting his administrative remedies."). Numerous events beyond Plaintiff's control could have been the cause for Plaintiff's appeal having been lost, destroyed, or ignored. And an instance where a properly filed grievance is lost or destroyed once it is no longer in an inmate's possession provides a textbook example of a remedy that is not available. *See Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006). Therefore, at most, given Plaintiff's own attestations and evidence inquiring into the status of his appeal, Defendants' ARB evidence demonstrates the existence of a factual dispute as to whether Plaintiff timely appealed Grievance No. K4-1023-1130 to the ARB. *See Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) ("If, however, a prisoner raises 'sufficient factual allegations

demonstrating a genuine dispute as to whether the administrative remedies were available to him,' a court must conduct an evidentiary hearing pursuant to *Pavey*[.]").

Accordingly, as will be discussed further below, an evidentiary hearing is needed if Defendants wish to further pursue the affirmative defense of exhaustion regarding whether Plaintiff timely appealed Grievance No. K4-1023-1130 to the ARB. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008); *see also Hernandez v. Lee*, 128 F.4th 866, 870 (7th Cir. 2025) ("It is instead for the district court to make the required credibility determinations after holding an evidentiary hearing."); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] judge can resolve an issue of exhaustion, like other threshold issues (such as jurisdiction), himself, in order to avoid multiple trials in the same case. But he can do that ***only after*** conducting an evidentiary hearing."); *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) ("At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility.").

Defendants also raise several arguments related to the contents of Grievance No. K4-1023-1130 (*see* Doc. 37 at pp. 9-10). As an initial matter, the Court notes that Grievance No. K4-1023-1130 unquestionably identifies Defendants Simmons, Loos, Furlow, and Kellerman (*see Id.* at p. 12). Furthermore, Grievance No. K4-1023-1130 clearly challenges Defendant Kellerman's use of the broomstick to repeatedly strike Plaintiff, thereby identifying Plaintiff's claim in Count 1. Conversely, Grievance No. K4-1023-1130 indisputably does not mention or discuss the mace spraying incident that occurred on June 7, 2023, because it only discusses events related to June 6, 2023 (*see* Doc. 1 at pp. 11-12; Doc. 18 at p. 5). Therefore, Grievance No. K4-1023-1130 does not identify Plaintiff's

claim in Count 3 and Plaintiff will need to turn elsewhere to establish his efforts to exhaust that claim.

However, the issue of whether Grievance No. K4-1023-1130 identifies Plaintiff's failure to obtain medical care claim in Count 2 is a closer question. Defendants argue that grievance does not identify Plaintiff's claim in Count 2 because the grievance never specifically states that Plaintiff sought medical care, which was denied by Defendants (*see* Doc. 37 at pp. 9-10). While this is a reasonable argument, the Court is not persuaded because it construes Plaintiff's claim in Count 2 too narrowly. A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Here, while Grievance No. K4-1023-1130 never explicitly states that Defendants failed to obtain him medical care, this alleged failure to obtain care can readily be identified from the contents of Plaintiff's grievance. *See Wilson v. Holloway*, 19 C 8114, 2022 WL 444113, at *2 (N.D. Ill. Feb. 14, 2022) ("Though the allegations in the complaint and the grievance are not identical, they involve the same alleged wrongdoing and wrongdoer."). In Grievance No. K4-1023-1130, Plaintiff detailed how Defendants witnessed him suffer harm at the hands of Defendant Kellerman and by cutting himself with the broken broomstick (Doc. 1 at pp. 11-12). Plaintiff then grieves that instead of immediately getting him aid, Defendants took numerous steps and actions to avoid getting in trouble such as leaving and coming back, and sending away the mental health nurse who was initially there to evaluate him (*Id.*). While this may not match the exact

wording of Count 2, it is clear from the totality of Plaintiff's grievance[2] that he was grieving both the force used upon him and the lack of care provided for his physical and mental health issues on June 6, 2023. Put simply, a grievance that alleges Defendants witnessed Plaintiff harm himself and did not promptly intervene to provide care and prevent further self-harm is sufficient to identify his claim that Defendants failed to obtain him medical care. Relatedly, witnessing Plaintiff's mental health issues which resulted in numerous instances of self-harm and then taking actions to avoid getting in trouble rather than providing mental health treatment for Plaintiff also provides adequate notice of Plaintiff's claim that Defendants failed to provide him with adequate mental health care on June 6, 2023.[3]

In summary, the Court finds that a genuine dispute of material fact exists as to whether Plaintiff timely appealed Grievance No. K4-1023-1130 to the ARB. Assuming Plaintiff timely appealed Grievance No. K4-1023-1130, then that grievance would serve to exhaust his claims in Counts 1 and 2. Meanwhile, even if Grievance No. K4-1023-1130 was exhausted, there can be no dispute that Grievance No. K4-1023-1130 does not exhaust Plaintiff's excessive force claim in Count 3 because it never discussed or even identified any events related to that claim.

---

[2] Furthermore, if, as Defendants contend, Grievance No. K4-1023-1130 was only challenging the use of excessive force, then there would have been no need for Plaintiff to discuss what occurred after alleging that Defendant Kellerman hit him with the broomstick, such as Plaintiff's inclusion of details about stabbing himself, having scars from doing so, and those who witnessed his self-harm.

[3] In addition, Grievance No. K4-1023-1130 specified that the nature of that grievance related to staff conduct, excessive force, and "mental health." (Doc. 1 at p. 11). The Grievance Officer's Report also noted that Plaintiff was seeking mental health treatment (*Id.* at p. 13). This provides additional evidence that Grievance No. K4-1023-1130 was also grieving Plaintiff's lack of mental health care and that prison officials recognized as much.

### II. Plaintiff's Missing Grievances

Crucially, even if Grievance No. K4-1023-1130 was not properly exhausted, a second evidentiary dispute exists which also necessitates a *Pavey* hearing. Notably, in Grievance No. K4-1023-1130, Plaintiff stated that "this **is the 3rd time** I'm submitting this grievance, the first time was July 6, 2023, the second time was August 23." (*Id.* at p. 12) (emphasis added). For this reason, Plaintiff has argued that he "attempted multiple times to exhaust" his administrative remedies by filing grievances, but those filings were either lost, destroyed, or ignored (Doc. 39, p. 1; *see also* Doc. 1 at p. 4).

Significantly, if Plaintiff filed a grievance on July 6, 2023, which was then lost, destroyed, or ignored through no fault of his own, this would also establish that Plaintiff exhausted the administrative remedies available to him. *See Lisle v. Keller*, 803 Fed. Appx. 926, 928 (7th Cir. 2020) ("The second factual dispute is the one Lisle highlighted in his briefing: whether he forwarded the counselor's denial of his original grievance to the grievance officer. Because '[a] swearing contest requires an evidentiary hearing to resolve, and none was held,' *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014), the case must go back to the district court on the issue of exhaustion."); *Lanaghan*, 902 F.3d at 688 ("[T]he proper focus is not whether the defendants engaged in affirmative misconduct, but whether Lanaghan was not able to file the grievance within the time period through no fault of his own.").

As with Grievance No. K4-1023-1130, both parties have provided some evidence to support their contentions on this point. On the one hand, Defendants have provided grievance logs and supporting affidavits documenting that no other related grievance

was received by Menard, Pinckneyville, or the ARB (*see* Docs. 37-3, 37-3, 37-4, 37-5, 37-6, 37-7). And on the other hand, Plaintiff has repeatedly claimed that he filed additional grievances that were similar to Grievance No. K4-1023-1130, which were not responded to at any level (Doc. 1 at p. 4; Doc. 39 at p. 1). Plaintiff also provided Grievance No. K4-1023-1130, wherein he claims to have submitted additional, related grievances on July 6 and August 23, 2023 (Doc. 1 at p. 12). "Such factual disputes can arise even when the prison denies that any grievance was filed, and the prisoner provides 'no documentation to back up his claim' that he filed a grievance because a 'swearing contest requires an evidentiary hearing to resolve.'" *Jackson*, 105 F.4th at 957. Consequently, a *Pavey* hearing will also be required to address Plaintiff's alleged missing grievances.

Meanwhile, in regards to Count 3, Plaintiff has neither rebutted Defendants' contentions that he did not file a grievance related to June 7, 2023, nor provided any evidence to create a dispute as to whether his missing grievances covered the mace incident. Plaintiff's statements in Grievance No. K4-1023-1130 do not provide any indication that Plaintiff's two missing grievances discussed the events from June 7, 2023 (*see* Doc. 1 at pp. 11-12). To the contrary, Plaintiff has consistently alleged that the missing grievances were similar to, if not the same as, Grievance No. K4-1023-1130 (*see, e.g.*, Doc. 1 at pp. 4, 7, 12). For example, in Plaintiff's Complaint, he stated, "[o]n July 6th 2023, while housed here in Menard Correctional Center I wrote a grievance about the June 6th 2023 incident and received no response. On August 23rd 2023 I wrote a grievance about the June 6th 2023 incident and again received no response." (Doc. 1 at p. 7). Tellingly, no similar claims or details were provided for any potential grievances addressing the

incident on June 7, 2023. For this reason, there is no dispute of material fact as to whether Plaintiff exhausted his administrative remedies on Count 3.[4] Quite simply, Plaintiff has not provided any evidence to create a genuine dispute as to whether he attempted to exhaust his administrative remedies on Count 3 but was prevented from doing so. Accordingly, Defendants' Motion for Summary Judgment on the Issue of Exhaustion is GRANTED as to Count 3, and Count 3 is DISMISSED without prejudice.

In conclusion, sufficient evidence exists, at this time, to demonstrate factual disputes on the issues of whether: (1) Plaintiff timely appealed Grievance No. K4-1023-1130 to the ARB, but that filing was then lost, destroyed, or ignored; and (2) Plaintiff timely filed other grievances on the issues raised in Counts 1 and 2 of his Complaint, which were then lost, destroyed, or ignored. Due to this factual dispute, Defendants' exhaustion-based motion for summary judgment is **DENIED,** at this time, as to Counts 1 and 2 (Doc. 37). If Defendants want to continue pursuing the affirmative defense of failure to exhaust as to Counts 1 and 2, they must file a notice within **14 days** of this Order requesting a *Pavey* hearing. And given the two distinct avenues by which Plaintiff alleges to have exhausted his administrative remedies, if Plaintiff prevails on either of these two disputes, then Defendants' motion will be denied as to Counts 1 and 2. In addition, if a

---

[4] While it is true that Plaintiff's Complaint *briefly* alleges that Plaintiff "wrote Grievances about the June 6th 2023 and June 7th 2023 attack at [Pinckneyville] as soon as I was released from 6B Suicide Watch. But did not receive a Grievance Ticket nor response." (Doc. 1 at p. 7). However, unlike with the alleged missing grievances from July 6, 2023, and August 23, 2023, Plaintiff did not include any additional evidence to support his allegation that he also grieved the mace incident that occurred on June 7, 2023. In fact, Plaintiff's Response neither refutes Defendants' contentions that he did not file a grievance related to the mace incident, nor provides any citation to the lone allegation in his Complaint of missing grievances related to events from June 7, 2023 (*see generally* Doc. 39). And this complete lack of reference or argument regarding Count 3 is particularly noteworthy when compared with the arguments and supporting evidence Plaintiff has proffered in regard to June 6, 2023.

hearing is requested, Defendants shall identify the witnesses they intend to call to testify, as well as the subject matter of each witness. If no request for a hearing is timely made, the Court will enter a scheduling order for discovery on the merits of this case.

Meanwhile, Plaintiff has failed to provide sufficient evidence to create a genuine factual dispute as to whether he exhausted his administrative remedies for his claim in Count 3. Accordingly, Defendants' Motion for Summary Judgment on the Issue of Exhaustion is GRANTED as to Count 3 and that Count is DISMISSED without prejudice.

## CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment on the Issue of Exhaustion is GRANTED in part and DENIED in part (Doc. 37). Specifically, Defendants' Motion is DENIED, at this time, as to Counts 1 and 2; and GRANTED as to Count 3 (Doc. 37). Count 3 is hereby DISMISSED without prejudice.

To the extent Defendants wish to further contest the dispositive factual issues of whether: (1) Plaintiff timely appealed Grievance No. K4-1023-1130 to the ARB, but that appeal was then lost, destroyed, or ignored; and (2) Plaintiff timely filed another grievance addressing the issues raised in Counts 1 and 2 of his Complaint, which was then lost, destroyed, or ignored; then Defendants must file a notice within **14 days** of this Order requesting a *Pavey* hearing. If a hearing is requested, Defendants shall identify the witnesses they intend to call to testify, as well as the subject matter of each witness. If no request is timely made, the Court will enter a scheduling order for discovery on the merits of this case.

IT IS SO ORDERED.

DATED: December 17, 2025

                                                       <u>s/ Mark A. Beatty</u>
                                                       MARK A. BEATTY
                                                       United States Magistrate Judge